# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| NEIL ALLEN O., | Case No.: 1:19-CV-00410-REP |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent, | |

Pending is Petitioner Neil Allen O.'s Petition for Review (Dkt. 1), appealing the Social Security Administration's denial of his application for Title II benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On February 14, 2018, Petitioner protectively filed an application for Title II benefits for a period of disability beginning January 1, 2012. This application was initially denied on May 29, 2018 and, again, on reconsideration on September 5, 2018. On November 4, 2018, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On March 27, 2019, ALJ Christopher R. Inama held a hearing in Boise, Idaho, at which Petitioner appeared and testified (Petitioner was unrepresented at the hearing). Kourtney Layton, an impartial vocational expert, also appeared and testified at the same hearing.

On May 15, 2019, the ALJ issued a decision denying Petitioner's claim, finding that he was not disabled within the meaning of the Social Security Act. Petitioner timely requested

**MEMORANDUM DECISION AND ORDER - 1**

review from the Appeals Council.  On August 23, 2019, the Appeals Council denied Petitioner's

Request for Review, making the ALJ's decision the final decision of the Commissioner of Social

Security.

Having exhausted his administrative remedies, Petitioner filed this case.  He raises four

points of error:  (i) the ALJ erred in determining that Petitioner's migraines were not a medically

determinable impairment; (ii) the ALJ failed to support his treatment of the medical opinions

with substantial evidence and ignored the opinions of the Veteran's Administration ("VA")

doctors; (iii) the ALJ failed to provide sufficient justification for discrediting Petitioner's

symptom testimony; and (iv) the ALJ's residual functional capacity determination was not

supported by substantial evidence.  Pet.'s Br. at 6-18 (Dkt. 13).  Petitioner requests that the Court

either reverse the ALJ's decision and find that he is entitled to benefits or, alternatively, remand

the case for further proceedings and award attorneys' fees.  *Id*. at 18.

## II.  <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g);  *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are

conclusive.  *See* 42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support

the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See*

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v.

Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less

than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable

amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**MEMORANDUM DECISION AND ORDER - 2**

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. <u>DISCUSSION</u>

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial

work activity" is work activity that involves doing significant physical or mental activities.  20

C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay

or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the

claimant has engaged in SGA, disability benefits are denied regardless of their medical

condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the

claimant has not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found

that Petitioner has not engaged in SGA since October 2014 (after the alleged onset date).  AR 35.

The second step requires the ALJ to determine whether the claimant has a medically

determinable impairment, or combination of impairments, that is severe and meets the duration

requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits

an individual's physical or mental ability to perform basic work activities.  20 C.F.R.

§§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it

does not significantly limit the claimant's physical or mental ability to do basic work activities.

20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable

impairment or combination of impairments, disability benefits are denied.  20 C.F.R.

§§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner has the following severe

medically determinable impairments:  degenerative disease of the spine, degenerative joint

disease of both knees, depressive disorder, anxiety and obsessive compulsive disorder, and post-

traumatic stress disorder ("PTSD").  AR 35.

The third step requires the ALJ to determine the medical severity of any impairments;

that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

**MEMORANDUM DECISION AND ORDER - 4**

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ concluded that Petitioner's above-listed medically determinable impairments, while severe, do not meet or medically equal, either individually or in combination, the criteria established for any of the qualifying impairments.  AR 36.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ concluded:

> Based on careful consideration of the entire record, the claimant has the residual functional capacity to perform medium work, as defined in 20 CFR 404.1567(c), except he can occasionally climb ladders, ropes, or scaffolds.  He can frequently balance, stoop, kneel, crouch, or crawl.  With the bilateral upper extremities, he can frequently reach.  he must avoid concentrated exposure to loud noise.  Work must be limited to simple and detailed tasks but not complex tasks.  He can have occasional interaction with co-workers, with no tandem tasks, and no public contact.

AR 38.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of their impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

**MEMORANDUM DECISION AND ORDER - 5**

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, they are not disabled; if the claimant cannot do other work and meets the duration requirement, they are disabled. Here, the ALJ found that as of the date of his decision, Petitioner was not capable of performing his past relevant work, but that he was currently capable of working full-time as a change person, mail clerk, or marker. AR 43-44. Based on these findings, the ALJ concluded that Petitioner was not disabled. *Id*.

**B.    Analysis**

1.    The ALJ Properly Considered Petitioner's Migraine Headaches at the Second Step of the Sequential Process

Petitioner argues that the ALJ erred when he determined that Petitioner's migraines and headaches were not a medically determinable impairment at step two. Pet.'s Br. at 6-9 (Dkt. 13). At the outset, the ALJ never concluded that Petitioner's migraine headaches were *not* medically determinable impairments; rather, the ALJ found that they did not significantly interfere with Petitioner's work and therefore were *not severe*. AR 36; *but see* AR 58 (ALJ stating at the hearing: "There's also mention of migraines, but I don't think the evidence satisfies migraines as what we call a medically determinable impairment. For example, one doc called it tension headaches, and another doc called it probably due to chronic sinus disease.").[1] To the extent Petitioner's criticism of the ALJ's decision exists within this more complete context, it still comes up short.

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities, the so-called

---

[1]  A January 27, 2017 treatment note assesses Petitioner as a "32 y/o male with TMJ [(temporomandibular joint)] associated tension headaches *that can trigger migraines*." AR 359 (emphasis added). Likewise, a December 19, 2018 treatment note indicates that Petitioner's brain MRI revealed chronic sinus disease and that "*this is where his headaches are coming from.*" AR 669 (emphasis added).

**MEMORANDUM DECISION AND ORDER - 6**

"severity regulation."  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R.

§§ 404.1520(c), 416.920(c).  Basic work activities are "the abilities and aptitudes necessary to do

most jobs," including:  (i) physical functions such as walking, standing, sitting, lifting, and

carrying; (ii) capacities for seeing, hearing, and speaking; (iii) understanding, carrying out, and

remembering simple instructions; (iv) use of judgment; (v) responding appropriately to

supervision, co-workers, and usual work situations; and (vi) dealing with changes in a routine

work-setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation

increases the efficiency and reliability of the valuation process by identifying at an early stage

those claimants whose medical impairments are so slight that it is unlikely they would be found

to be disabled even if their age, education, and experience were taken into account."  *Bowen*, 482

U.S. at 153.  But as importantly, the regulation must not be used to prematurely disqualify a

claimant.  *Id*. at 158 (O'Connor, J., concurring).  "[T]he step two inquiry is a de minimis

screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th

Cir. 1996).  "It is not meant to identify the impairments that should be taken into account when

determining the RFC."  *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).  A mere

diagnosis is insufficient to establish a severe impairment; instead, a claimant must *show* that his

medically determinable impairments *are* severe.  20 C.F.R. § 416.921.

Here, substantial evidence supports the ALJ's rationale that Petitioner's migraine

headaches do not rise to the requisite level of severity.  For instance, during the hearing,

Petitioner did not specifically correlate any functional limitations to his migraine headaches.  AR

56-69.  To be sure, despite Petitioner's subjective descriptions of daily migraines, the ALJ noted

that he performed "many activities of daily living without difficulty, including personal care,

caring for pets, household chores, shopping, driving, managing money, and preparing meals . . ."

**MEMORANDUM DECISION AND ORDER - 7**

AR 39.  Moreover, the record shows that Petitioner himself claims that his social anxiety and

PTSD – *not* his migraine headaches – prevented him from completing school and working at his

part-time job.  AR 257 (Petitioner indicating within the "Disability Report":  "I have since tried

attending BSU where after three semesters I quit taking classes because the symptoms of my

PTSD were becoming worse.  I worked at a friend's restaurant for about 14 months.  I had to quit

because the symptoms of my PTSD were worsening again.  I have been working at my partner's

bar for the last 16 months and have had to go from four bar shifts a week to five hours a week

cleaning because the symptoms of my PTSD have continue to worsen.").  Again, the relevant

question at step two is not whether Petitioner suffers from migraine headaches, but whether his

migraine headaches limit his ability to perform basic work activities.  *See supra*.  On that score,

the ALJ properly highlighted evidence suggesting they do not.

But even if the ALJ should have included Petitioner's migraine headaches as a severe

impairment at step two, that error is harmless because the ALJ resolved step two in Petitioner's

favor and continued with the sequential evaluation process.  *Lewis v. Astrue*, 498 F.3d 909, 911

(9th Cir. 2007).  In *Lewis*, the ALJ did not count the claimant's bursitis as a severe impairment at

step two but considered the limitations imposed by bursitis for the RFC analysis at step four.  *Id*.

The court found this analysis to be sufficient under the substantial evidence standard and stated

that if there was any error, that error would be harmless.  *Id*.; *see also Buck*, 869 F.3d at 1048-49

(an ALJ's failure to list a particular impairment as severe at step two is harmless error, assuming

the ALJ considers the limitations caused by all medical determinable impairments in assessing

the claimant's RFC).  Similarly, here, the ALJ found that Petitioner's depressive disorder,

anxiety, and PTSD were severe at step two and considered all of Petitioner's impairments

(whether severe or non-severe) when evaluating his RFC at step four.  AR (38) ("He must avoid

concentrated exposure to loud noise.  Work must be limited to simple and detailed tasks but not

**MEMORANDUM DECISION AND ORDER - 8**

complex tasks.  He can have occasional interaction with co-workers, with no tandem tasks, and no public contact.").  Thus, the categorization of migraine headaches as non-severe at step two is largely inconsequential because the ALJ necessarily considered the limiting effects of this impairment alongside Petitioner's other related impairments in determining his RFC.  In other words, any error by the ALJ at step two would have been harmless.

Reversal is not warranted on this issue.

2.      The ALJ Reasonably Weighed the Medical Opinion Evidence

Petitioner takes issue with the ALJ's evaluation of certain medical opinions.  Specifically, he claims that the ALJ improperly (i) rejected the opinions of Dr. Pamela Roman, a Department of Veterans Affairs psychologist, and (ii) failed to justify his reliance upon state agency psychologists, Drs. Michael Dennis and Mack Stephenson.  Pet.'s Brief at 9-12.  Respondent disagrees, asserting that the ALJ appropriately considered the medical opinion evidence. Respt.'s Brief at 12-17 (Dkt. 17).

The Social Security Administration revised the regulations applicable to the evaluation of medical evidence for disability applications filed on or after March 27, 2017 (like Petitioner's). 82 Fed. Reg. 5844; 20 C.F.R. § 404.1520c.  Under the newly-revised regulations, the framework an ALJ uses for evaluating medical source opinions is substantially different than it used to be. Most notably, the old regulations embraced a hierarchy for evaluating medical opinions depending on the nature of the treatment relationship.  20 C.F.R. § 404.1527(c).  Within this hierarchy, the opinions of treating physicians generally were given more weight than the opinions of examining physicians, and the opinions of examining physicians generally were afforded more weight than the opinions of non-examining, reviewing physicians.  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).  The new regulations discard this pyramid of escalating deference, which was customarily known as the "treating source" or "treating

**MEMORANDUM DECISION AND ORDER - 9**

physician" rule.  *See* 20 C.F.R. § 404.1520c (eliminating the use of the term "treating source").

Instead, the new regulations set forth one uniform standard for evaluating all medical source

opinions.  *See* 20 C.F.R. § 404.1520c (The SSA "will not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s), including those from your medical sources.").

The lynchpin of this new standard is "persuasiveness."  20 C.F.R. § 404.1520c(a).  When

determining which medical opinions to credit, an ALJ evaluates how persuasive each medical

opinion is by considering (i) supportability, (ii) consistency, (iii) relationship with the claimant,

(iv) specialization, and (v) any "other factors that tend to support or contradict a medical

opinion."  20 C.F.R. §§ 404.1520c(c)(1)-(5).  The ALJ's duty to articulate a rationale for each

factor varies. 20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ must explain

how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  The supportability factor looks

inward at a medical opinion's bases: "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) . . . , the more persuasive the medical opinions . . . will be."  20 C.F.R. §

404.1520c(c)(1).  On the other hand, the consistency factor looks outward and compares the

opinion to the other evidence in the record: "[t]he more consistent a medical opinion(s) . . . is

with the evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 404.1520c(c)(2).

The ALJ is only required to articulate findings on the remining factors (treatment

relationship, specialization, and any other factors) where "two or more medical opinions . . .

about the same issue are both equally well-supported . . . and consistent with the record . . . but

are not exactly the same."  20 C.F.R. §§ 404.1520c(b)(2)-(3).  Furthermore, an ALJ may address

**MEMORANDUM DECISION AND ORDER - 10**

multiple opinions from a single medical source in one analysis.  20 C.F.R. § 404.1520c(b)(1)

(explaining that "voluminous case records" necessitate source-level articulation).

Against these still-developing standards, the ALJ's consideration of the at-issue medical

opinions was appropriate.  With respect to Dr. Roman, Petitioner claims that the ALJ did not

consider her May 8, 2015 "Initial Post-Traumatic Stress Disorder (PTSD) – DSM V Disability

Benefits Questionnaire" (the "Questionnaire").  Pet.'s Brief at 10-11 (Dkt. 13) (citing AR 281-89

(the Questionnaire itself)).  The ALJ, however, *did* discuss the Questionnaire, stating:

> An evaluation by a Department of Veterans Affairs psychologist in 2015
> substantiated the claimant's diagnosis of post-traumatic stress disorder.  The doctor
> summarized, 'He meets criteria for posttraumatic stress in that he has bad dreams,
> is emotionally and physically reactive when he is reminded, he is avoidant.  He has
> difficulty with sleep, is irritable, is overly alert and easily startled.'  Although the
> conclusion was based on some observation, it relies largely on the claimant's
> subjective report during the one-time evaluation.  It also described the claimant as
> having full activities, despite PTSD difficulties.  These included work, attending
> college, and independence in activities of daily living and no difficulty with
> walking, standing or sitting.  His treatment history is limited in 2015 and early 2016.
> In November 2016, the claimant reported he was doing well regarding his anxiety.

AR 40 (internal citations omitted).

Regardless, the upshot of the Questionnaire was that Petitioner's symptomology supports

a PTSD diagnosis.  AR 281, 289.  But this is undisputed.  The ALJ acknowledged that Petitioner

suffers from several impairments, including PTSD, that limit his ability to work.  AR 35.

Further, in step four of the sequential process, the RFC analysis, the ALJ specifically accounted

for Petitioner's recognized impairments and corresponding limitations.  AR 38-43.  Therefore, to

the extent Petitioner's arguments vis à vis Dr. Roman's Questionnaire depend upon the existence

of certain limiting impairments or symptoms, such arguments miss the point because the ALJ

already acknowledged as much and provided limitations in the RFC to accommodate Petitioner's

symptoms.

**MEMORANDUM DECISION AND ORDER - 11**

Crucially, the issue is not whether such impairments and symptoms exist, but the extent

to which they prevent Petitioner from working at all.  Here, Dr. Roman's opinion was lacking.

Dr. Roman's opinion referenced undefined measures of occupational and/or social functioning

impairment (which simply track and support an underlying PTSD diagnosis).  However, Dr.

Roman did not actually explain what specific restrictions Petitioner has in his ability to perform

physical, mental, or other demands of work (beyond those the ALJ already accommodated

within Petitioner's RFC).  That is, there is no basis to conclude from the Questionnaire that

Petitioner is altogether incapable of working.  *See, e.g.*, *Pagano v. Berryhill*, 2019 WL 4397332

at *7 (D. Idaho 2019).  Without more, it cannot be said that the ALJ improperly evaluated Dr.

Roman's Questionnaire.[2]

Petitioner's argument pertaining Drs. Dennis and Stephenson are similarly misplaced.

Each doctor concluded that the medical evidence supports determinable impairments of PTSD

and depressive disorder.  AR 81-83, 95-97.  The ALJ agreed.  Yet, Petitioner curiously claims

that "the ALJ provided no analysis how these opinions were persuasive."  Pet.'s Brief at 12 (Dkt.

13).  In fact, the ALJ provided sufficient explanations in these respects.  The ALJ explained that

"both psychologists are mental health experts highly familiar with agency standards and

reviewed the claimant's medical records available at that time."  AR 42.  A source's

specialization along with the source's familiarity with the evidence are valid factors that an ALJ

may consider when giving weight to an opinion.  20 C.F.R. §§ 404.1520c(c)(4)-(5).  The ALJ

---

[2]  This same reasoning applies to Christina E. Pollock's March 5, 2019 letter (which
Petitioner argues the ALJ improperly dismissed).  Pet.'s Brief at 15-16 (Dkt. 13) (citing AR
692).  As with Dr. Roman, Ms. Pollock's opinions succeed only in confirming that Petitioner
suffers from PTSD, anxiety, and depression – issues that are not in dispute.  AR 692.  Again, the
question is not whether such limitations/symptoms exist, but whether Petitioner is able to work
even with such limitations.  Moreover, as the ALJ described, Ms. Pollock's unadorned references
to Petitioner's "overwhelming anxiety symptoms" and corresponding functional limitations are
at odds with the Petitioner's actual daily activities.  AR 42.

**MEMORANDUM DECISION AND ORDER - 12**

also noted that the psychologists "supported their conclusions with reference to [Petitioner's] daily activities, his conservative treatment history, and his mental status examinations."  AR 42. Further, he found that "[t]heir opinions are consistent with notes showing that he responded well to medication and counseling and was future-oriented and able to engage in public frequently." *Id*.  As stated, supportability and consistency are the most important factors when evaluating a medical opinion's persuasiveness.  *Supra*.  In short, the ALJ provided sufficient explanation for why he considered Drs. Dennis and Stephenson's opinions persuasive.

Reversal is not warranted on this issue.

### 3.      The ALJ Did Not Err in Questioning Petitioner's Credibility

Petitioner argues that the ALJ improperly rejected his pain and symptom testimony. Pet.'s Brief at 12-16 (Dkt. 13).  As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities).  In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of (i) claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or inconsistencies between claimant's testimony and conduct; as well as (ii) claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those

**MEMORANDUM DECISION AND ORDER - 13**

symptoms.  *See* SSR 96-7p, *available at* 1996 WL 374186 (July 2, 1996).  In short, "[c]redibility decisions are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

In rejecting a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The reasons given for rejecting a claimant's testimony must be supported by substantial evidence in the record.  *Id.*  This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick*, 157 F.3d at 722).  If there is such substantial evidence, the Court will not engage in second-guessing.  *See Thomas*, 278 F.3d at 959.  Even when the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Here, Petitioner alleges completely disabling limitations resulting from his migraine headaches, back/joint pain, PTSD, anxiety, panic attacks, and depression.  To this end, he states the following within his March 27, 2018 and August 26, 2018 "Headache Questionnaires":

- Needing to "close eyes and rest" while feeling "confused" and "tired."

- "Difficulty seeing, maintaining positive, concentration on task at hand," as well as speaking and standing.

- "Concentration, nausea, some migraines will put me down for up to 24 hours."

- "I have had headaches for many years and have tried many treatment options to include oral medications, injections, over the counter meds, acupuncture and acupressure, massage therapy.  Currently I am working two days a week, mostly because I have needed to get too many shifts covered."

AR 227, 251-52.

Likewise, within a March 27, 2018 "Function Report – Adult," Petitioner generally identifies the following functional/mental limitations:

**MEMORANDUM DECISION AND ORDER - 14**

- "I have flashbacks and anxiety attacks while working with customers.  After some loud noises I will lose time.  Extremely agitate very easily."

- "Some days unable to leave bed/house."

- Cannot "concentrate, regulate reactions, remember."

- "I average 4-8 hours [of sleep] a night.  Have night terrors which get physical. Wake up 2-4 times a night."

- Needs help with "reminders."

- "I used to cook three meals a day, now 1-2 maybe.  Sometimes I won't eat due to depression or anxiety."

- Needs reminders to pay bills.

- Watches "more TV, less engaged with others.  Most hobbies are lone activities."

- "Have to force myself out of the house. . . .  I force myself out up to six days a week so I don't become a recluse."

- Experiences "road rage, short-tempered, frustrated easily."

- "I used to be out every day.  Gym, concerts, movies, sports.  Now my anxiety keeps me at home mostly."

- Notes difficulty with lifting, walking, talking, hearing, memory, completing tasks, concentration, understanding, and getting along with others.

- Has trouble "[t]alking – hard to keep conversation.  Hearing – unless I'm looking at you (don't hear).  Memory – forget new things after about an hour. Completing tasks – many unfinished projects.  Concentration – often feel manic, doing 2-3 things at a time."

- Does not handle stress well.  "I easily get consumed by it."

- "Not good with change."

- "Afraid of most things.  Large groups.  Things I have no control of.  Bad sleep, bad memory/recall."

- "I am anticipating in-patient PTSD treatment within the next 12 months.  I have tried to do what I normally would do but the symptoms of my PTSD have

seemed to worsen.  The added stress and anxiety of work and people have not helped, and cause regression in my opinion."

AR 229-36.

Petitioner essentially confirmed as much during the hearing, testifying as follows in response to questions from the ALJ:

- "I'm always in pain.  I've been told that's a side effect of the PTSD."

- He does not "shop in the store."

- "Most days, I'm actually terrified to leave my house.  If I go with somebody else, typically my husband or call a friend, I'll be able to get through about half of the shopping for the house, and then I'll just have to go again later on that week."

- "I actually hire most of [the yardwork] out . . . .  Again, it's walking out of the house and having attacks when people walk by . . . ."

- I "[u]sually sit in the house and worry about everything that's happening."

- "Usually, I'm just in my head."

- "Very few [social activities].  My husband owns a bar, so I'll go down with him occasionally if he's going to check on stuff, and then we'll leave shortly after."

- Able to attend bar "[o]n the slower shifts . . . .  Usually, if I get over six customers I start to have a panic attack and he works with me so he can take over, and I just go sit in the kitchen until I'm able to get back."

- "Just the anxiety.  I have a hard time sitting in one spot."

- "Sometimes I have difficulty understanding what they're saying, and when I speak, I don't always get across my point. . . .  Sometimes I'm told it's just gibberish when I'm speaking."

- "Once I got out of the military, I started  going to BSU to finish my degree to become a physical therapist.  During that time, the first semester was good, and then I started to have more anxiety.  It would affect my class work, being with other people, just being in the classroom in general, so I dropped out of school, started working at the first restaurant and started off about four days a week, five days a week."

**MEMORANDUM DECISION AND ORDER - 16**

- "Within the first year, I had to take that down to two days a week because I couldn't handle being around that many people.  I would have a lot of panic attacks at work, and I would basically be down for the next day at home.  Same thing happened at my husband's bar.  Started off at about four days a week because I didn't feel like I had a choice.  Worked those days, and then the PTSD has just gotten worse with the anxiety attacks, thoughts of hurting myself as well.  I've been attempting to do as much as I can, and it's just making everything worse."

- "Many times my panic attacks aren't caused by anyone or anything being around.  It's the memories, the dreams, the smells.  If we had a loud bang right now or somebody clapped, typically I have moments of – not lost consciousness, but lost time where I've been told I basically freeze for up to five minutes, and then I'll come back and I won't know what happened, what's been going on . . . ."

AR 57-70.

The ALJ concluded that Petitioner's medically determinable impairments could reasonably be expected to cause his alleged symptoms.  AR 39.  However, the ALJ observed that Petitioner's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the evidence."  *Id*.  As described below, the ALJ's justification in this regard amounts to clear and convincing reasons for questioning Petitioner's credibility.

First, the ALJ concluded that Petitioner's daily activities were inconsistent with his allegations of disabling symptoms and limitations.  AR 39, 41.  The ALJ pointed out that Petitioner (i) has little difficulty performing routine tasks, such as personal care, caring for pets, household chores, shopping, driving, managing money, and preparing meals; (ii) regularly interacts in public by going to work, restaurants, and (at least one) bar; (iii) was working part-time at a restaurant and as a bouncer; (iv) was planning travel and other social activities; and (v) was considering going back to school  *Id*. (citing AR 229-40, 317, 667, 708).[3]  Appropriately, the

---

[3]  Petitioner's partner, Joseph Christopherson, largely confirms this (alongside the existence and effects of Petitioner's PTSD, social anxiety, and panic attacks) within a "Function

**MEMORANDUM DECISION AND ORDER - 17**

ALJ accepted Petitioner's complaints that he suffers from certain impairments or associated pain. But also appropriately, in considering and discussing Petitioner's daily activities, the ALJ's focus was on his claim that he cannot work *because* those impairments allegedly limit his ability to work altogether. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("Even where those activities suggest some difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of *totally* debilitating impairment.") (emphasis added).

Second, the ALJ found that Petitioner's medical records do not substantiate his subjective allegations of totally-disabling limitations. AR 39. The ALJ referenced that, while Petitioner claimed to have curtailed his work in October 2014 due to his medical conditions, his limited treatment history in 2015 and 2016 did not support this. AR 40 (citing AR 186). And, while Petitioner began "closer care with psychiatry" in late 2017, (i) he reported improvement of anxiety symptoms within a few months, and (ii) most of his visits in 2018 "were only about quarterly" and his symptoms were well-managed with conservative treatment. AR 41 (citing AR 330, 600, 609, 718). "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Third, the ALJ explained how Petitioner's alleged limitations can be effectively controlled with medication. AR 41-43. For example, in April 2015, Petitioner reported that he has "been able to abort the headaches with Zomig." AR 478. In January 2017, Petitioner was

---

Report Adult – Third Party." AR 210-18. Petitioner argues that the ALJ did not consider a subsequent March 20, 2019 letter from Mr. Christopherson. Pet.'s Brief at 15 (Dkt. 13). While technically true, this letter aligns with Mr. Christopherson's earlier report which the ALJ *did* consider. AR 39 ("[E]ven taking these descriptions of activities of daily living as accurate, *they do not portray complete disability*.") (emphasis added). Any error in this regard is therefore harmless.

**MEMORANDUM DECISION AND ORDER - 18**

able to self-treat his migraine headaches with Motrin.  AR 671.  In January 2018, Petitioner presented as "doing very well" and found propranolol effective at treating panic and anxiety in social situations.  AR 41 (citing AR 330).  In April 2018, Petitioner complained of more frequent and intense migraine headaches "in the past few months" which corresponded to him stopping his propranolol medication ("usually tak[ing] ibuprofen and caffeine with some relief" instead).  AR 321-24.  At that time, Petitioner was encouraged to restart propranolol and advised to stop drinking and smoking.  AR 323.  In June 2018, Petitioner had stopped taking his prescribed medication because he did not believe it was working.  AR 712, *compare with* AR 709 (August 2018 treatment note indicating that Petitioner "has started taking his meds again" and "has been doing better").  Even so, he did not seek treatment again for migraine headaches until December 2018 – at which time his provider indicated that his headaches were caused by a sinus infection and prescribed antibiotics.  *Supra* (citing AR 669).  When Petitioner returned two months later, he still complained of sinus pain, but did not mention migraine headaches.  AR 661.  At bottom, though the severity of Petitioner's symptoms themselves may wax and wane, the record reveals that he has had improvement with proper and consistent medication management.  *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (finding the ALJ's reasons for his credibility determination were "clear and convincing, sufficiently specific, and supported by substantial evidence in the record," in part, because "the ALJ reasonably noted that the underlying complaints upon which her reports of pain were predicated had come under control.").

Together, the record contains clear and convincing explanations as to why the ALJ found Petitioner's testimony not entirely credible.  While Petitioner has identified conflicting evidence that supports his position, it is not the Court's role to weigh such evidence, draw inferences, or resolve credibility.  Rather, the Court's measuring stick is simply whether the ALJ supported his decision to doubt Petitioner's credibility and deny disability benefits with clear and convincing

**MEMORANDUM DECISION AND ORDER - 19**

reasons.  He did.  Accordingly, as required by controlling law, the ALJ will not be second-guessed as to such conclusions on the record here against the justifications provided.  *Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

Reversal is not warranted on this issue.

### 4.    The ALJ Did Not Err in Assessing Petitioner's RFC

The ALJ concluded that Petitioner's RFC allows him to perform medium work with certain limitations, and that there are jobs in the national economy that do not require activities precluded by his RFC.  AR 38-44.  Petitioner faults the ALJ on this issue because the ALJ failed to include in his hypotheticals to the vocational expert additional limitations to account for (i) unexcused absences and being off-task "secondary to migraines and/or headaches," and (ii) "time off task related to panic attacks provoked by smells or noises."  Pet.'s Brief at 17-18 (Dkt. 13).  The Court disagrees.

Preliminarily, these arguments rise and fall with the Court's earlier discussion of these same issues.  *Supra*.  The Court will not repeat that discussion here.  But more to the point, other than Petitioner's own questioned testimony, there is no evidence establishing that Petitioner would be so off-tasked.  So, it was reasonable for the ALJ not to pose the proposed "off-task" hypothetical questions to the vocational expert.  At the same time, the ALJ included noise and social limitations in his hypotheticals to the vocational expert and later incorporated the same within Petitioner's RFC.  AR 38-44, 72-75.  *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) (it is the ALJ's responsibility to "translat[e] and incorporat[e] [the] clinical findings into a sufficient RFC.").  In this setting, substantial evidence supports the ALJ's findings at the fourth and fifth steps of the sequential process.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 20**

2005) (ALJ properly relied on vocational expert's testimony because "[t]he hypothetical that the ALJ posed to the [vocational expert] contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").

Reversal is not warranted on this issue.

## IV.  **CONCLUSION**

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ.  The ALJ has provided reasonable and rational support for his conclusions, even if such evidence is susceptible to a different interpretation.  Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence.  Therefore, the Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V.  **ORDER**

Based on the foregoing, Petitioner's Petitioner for Review (Dkt. 1) is DENIED and the decision of the Commissioner is AFFIRMED.

DATED:  September 30, 2021

_____
Honorable Raymond E. Patricco
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**